OHIO UROLOGY, INC., Appellant,

v.

POLL, Appellee.

[Cite as *Ohio Urology, Inc. v. Poll* (1991), 72 Ohio App.3d 446.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–848.

Decided Feb. 8, 1991.

*Vorys, Sater, Seymour & Pease* and *Nancy L. Danison;* *Leonard E. Kaplan,* for appellant.

*Burman & Robinson* and *Robert N. Burman;* *Chester, Hoffman, Willcox & Saxbe, John J. Chester, Charles R. Saxbe* and *Donald C. Brey,* for appellee.

REILLY, Presiding Judge.

This is an appeal from a judgment of the Franklin County Court of Common Pleas, which granted defendant's motion for summary judgment.

Plaintiff advances the following assignments of error:

"I.   The trial court erred in denying Ohio Urology's application for a temporary restraining order and motion for preliminary injunction.

"II.   The trial court erred in dismissing Ohio Urology's claim for declaratory judgment and specific performance of a covenant not to compete based upon the referee's report recommending summary judgment in Dr. Poll's favor.

"III.   The trial court erred in failing to independently critically review and verify to its own satisfaction the correctness of the referee's report pursuant to Civ. Rule 53."

Plaintiff filed a complaint in the trial court on March 27, 1990 against defendant seeking declaratory and injunctive relief to remedy an alleged breach of a covenant not to compete contained in the contract between the parties.   Defendant counterclaimed, alleging plaintiff breached its contract with him.

On April 2, 1990, both parties applied for temporary restraining orders to protect their respective interests.   After a hearing, the trial court orally denied these motions and referred the case to a referee of the court.

Defendant filed his motion for summary judgment on April 13, 1990 and plaintiff opposed the motion.   A referee heard the cause and recommended

that defendant's motion be granted. Consequently, plaintiff filed objections to the report, which the trial court overruled by judgment entry, filed on July 13, 1990. By agreement of the parties, all other claims, including the request for a permanent injunction, were dismissed so that immediate appeal could be taken from the denial of temporary injunctive relief.

Defendant is a urologist who came to Ohio in 1987 to practice medicine with plaintiff, a professional corporation located on the campus of Riverside Methodist Hospital in Columbus, Ohio. Plaintiff is owned and operated by two other urologists: Drs. Henry A. Wise II and Stephen A. Koff. Dr. Wise is the controlling shareholder of the corporation. He has an office at Riverside, while Dr. Koff has an office near Children's Hospital.

In May 1987, Dr. Wise contacted defendant about practicing in Columbus at Ohio Urology. At the time, defendant was practicing and teaching urology at Boston's Massachusetts General Hospital, the teaching hospital for the Harvard Medical School.

Defendant is a skilled surgeon and kidney stone specialist. He is accomplished in the latest medical techniques, such as lithotripsy. This nonsurgical procedure removes kidney stones by means of high intensity shock waves. It is performed with a lithotripter, an expensive piece of medical equipment. In Ohio, only Cincinnati, Cleveland, Toledo, and Columbus have such devices. The Ohio Kidneystone Center in Columbus, located at Riverside, houses the lithotripter.

Defendant accepted plaintiff's offer of employment, signing a two-year employment agreement, which was to commence on October 15, 1987. The agreement, terminable by plaintiff for good cause as defined therein, contains a broadly written covenant not to compete precluding defendant for two years after termination of the employment agreement from competing with plaintiff within a five-mile radius of any Ohio Urology office. Further, the employment agreement contains a provision stating that the employee acknowledges that damages for breach of this covenant are an inadequate remedy and that plaintiff shall be entitled to injunctive relief. Moreover, the employment agreement contains a provision stating that the employee acknowledges that plaintiff's list of patients is a valuable and unique asset which the employee shall not disclose to anyone or claim as his own. Finally, it states that, as to the restraint on competition: "The foregoing prohibited activity shall not include Employee's maintenance or establishment of staff privileges at an acute care hospital."

Aside from the compensation and benefits provided for in the employment agreement, part of the inducement to defendant to relocate in Columbus was a provision in the contract entitling him to be an "equity participant" in the

practice upon successful completion of his term of employment. Plaintiff is an established medical practice with a large patient and physician referral base. Dr. Wise sought defendant's services because of the inability to service all of the patients seeking treatment.

Defendant came to Columbus and performed pursuant to the agreement. During this time, however, disagreements developed. In particular, in 1989 defendant sought to purchase an equity interest in Ohio Urology for $50,000. Defendant contends that this sum had always been the agreed purchase price as represented by Dr. Wise. But, at a meeting with Dr. Wise's accountants, defendant learned that Dr. Wise wanted up to $500,000 for a twenty percent interest in the practice.

The parties were unable to resolve their differences and eventually defendant established his own practice. It is disputed whether defendant was terminated or whether he left on his own accord. In any event, it is undisputed that he is practicing urology at his new office, located approximately one block from Riverside and Ohio Urology. Dr. Wise contends that defendant is soliciting former Ohio Urology patients and physician referrals to the detriment of plaintiff. Defendant denies this.

The first and second assignments of error are interrelated and considered together. Plaintiff contends the trial court erred in finding that all covenants not to compete between physicians are unenforceable as a matter of law.

The referee found that restrictive covenants between physicians are contrary to public policy and, therefore, unenforceable. The referee based this conclusion on certain provisions of the American Medical Association's ("AMA") Principles of Medical Ethics and interpretations of these principles contained in the AMA's 1989 Current Opinions of the Council on Ethical and Judicial Affairs. The referee explained that these ethical standards became part of the state's public policy because of R.C. 4731.22(B)(18), a licensing statute which allows the state medical board to discipline a physician for " * * * violation of any provision of a code of ethics of a national professional organization as specified in this division. 'National professional organization' means the American medical association * * *." Further, the statute requires the board to keep on file current copies of the code of ethics of the various professional organizations.

In finding physician covenants unenforceable, the referee relied on the AMA's Principles of Medical Ethics, Section Six, which provides:

"A physician shall, in the provision of appropriate patient care, except in emergencies, be free to choose whom to serve, with whom to associate, and the environment in which to provide medical services."

The 1989 Current Opinions contain a specific interpretation of this provision in Section 9.02, entitled "Agreements Restricting the Practice of Medicine." This provision states:

"The Council on Ethical and Judicial Affairs discourages any agreement between physicians which restricts the right of a physician to practice medicine for a specified period of time or in a specified area upon termination of employment or a partnership or a corporate agreement. Such restrictive agreements are not in the public interest."

Moreover, Current Opinions Section 6.11 states the policy that competition among physicians is to be encouraged. And Current Opinions Section 9.06 states the principle that free choice of physicians is the right of every individual, and that free competition among physicians and alternative systems of care are prerequisites of ethical practice and optimal care.

In this case, we need not consider the question of whether the legislature intended to incorporate the Council's Current Opinions into R.C. 4731.-22(B)(18). For even if this were the case, the Council's Current Opinions would not be dispositive herein.

The AMA's interpretation of Principle Six contained in Current Opinions Section 9.02, which specifically applies to covenants not to compete, only "discourages" such covenants. While this AMA interpretation concludes with the strong statement that such covenants are not in the public interest, when read in context and as a whole, Section 9.02 does not support the conclusion that the AMA intended to ban all such covenants. Plainly, the AMA could have flatly stated that such agreements are unethical and prohibited. In other words, unlike DR 2–108(A), which expressly prohibits almost all restrictive covenants among lawyers, see *Dwyer v. Jung* (1975), 137 N.J.Super. 135, 348 A.2d 208, the ethical standards pertaining to physicians do not mandate unenforceability.

Thus, the referee erred in finding that all covenants not to compete between physicians are *per se* unenforceable pursuant to the Principles of Medical Ethics or their interpretations. The pertinent provisions promulgated by the AMA do not support such a sweeping ban. Cf. *Karlin v. Weinberg* (1978), 77 N.J. 408, 390 A.2d 1161, 1169, fn. 6 (addressing a prior version of the Principles of Medical Ethics).

Traditionally, agreements not to compete were viewed as restraints of trade and, therefore, were held invalid at common law on the ground of public policy. *Extine v. Williamson Midwest, Inc.* (1964), 176 Ohio St. 403, 404, 27 O.O.2d 375, 375, 200 N.E.2d 297, 298. See, generally, Blake, Employee Agreements Not to Compete (1960), 73 Harv.L.Rev. 625. Certain ancillary restraints, however, like those incident to employment agreements, were

upheld under the rule of reason. See 2 Restatement of the Law 2d, Contracts (1979) 41, Section 188(2). Today, the weight of authority holds that reasonable covenants not to compete after termination of employment entered into between physicians are enforceable. Annotation, Validity and Construction of Contractual Restrictions on Right of Medical Practitioner to Practice, Incident to Employment Agreement (1975), 62 A.L.R.3d 1014. See, also, Aspelund & Erikson, Employee Noncompetition Law (1990) 6–117, Section 6.04(16), fn. 366.

In Ohio, the applicable rule of reason regarding covenants not to compete was stated in *Raimonde v. Van Vlerah* (1975), 42 Ohio St.2d 21, 71 O.O.2d 12, 325 N.E.2d 544, where the Supreme Court wrote in paragraph two of the syllabus:

"A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if the restraint is no greater than is required for the protection of the employer, does not impose undue hardship on the employee, and is not injurious to the public."

The court emphasized that this rule is to be applied on a case-by-case basis. So, each case should be decided on its own facts. *Id.* at 25, 71 O.O.2d at 14, 325 N.E.2d at 547.

In *Williams v. Hobbs* (1983), 9 Ohio App.3d 331, 9 OBR 599, 460 N.E.2d 287, this court applied the *Raimonde* rule to a case involving specific performance of a covenant not to compete in Franklin County against a skilled physician specializing in interventional radiology. After noting that his subspecialty was not common among radiologists and that enforcement of the covenant would be unduly harsh given that the hospital from which he was precluded from practicing was one of the few osteopathic institutions in which he could practice his specialty, this court held that the covenant was unreasonable. This court wrote in paragraph one of the syllabus:

"A covenant restraining a physician-employee from competing with his employer upon termination of employment is unreasonable where it imposes undue hardship on the physician and is injurious to the public, the physician's services are vital to the health, care and treatment of the public, and the demand for his medical expertise is critical to the people in the community."

The law does not favor restrictive covenants. The rule of reason reflects this as these covenants, despite freedom of contract, are enforceable only insofar as they protect some legitimate interest of the employer. See *Briggs v. Butler* (1942), 140 Ohio St. 499, 507, 24 O.O. 523, 526, 45 N.E.2d 757, 761. This measure of disfavor is especially acute concerning restrictive

covenants among physicians, which affect the public interest to a much greater degree.

The AMA has stated that these agreements should be discouraged. It is vital that the health and expectations of patients, who are rarely aware of private agreements among physicians, be adequately protected. It is also important that competition among physicians be encouraged in these times of increasing health care costs.

Hence, in analyzing such covenants, a court must first be mindful of the rule of strict construction. See *Arthur Murray Dance Studios of Cleveland, Inc. v. Witter* (C.P.1952), 62 Ohio Law Abs. 17, 30, 105 N.E.2d 685, 693. These covenants should be strictly construed in favor of professional mobility and access to medical care and facilities. An adjunct to this principle of strict construction is that a court may modify the covenant between the parties under *Raimonde* to render it reasonable. See *Rogers v. Runfola & Assoc., Inc.* (1991), 57 Ohio St.3d 5, 565 N.E.2d 540.

The covenant broadly proscribes competition within a five-mile radius of Ohio Urology. There is an exception, however, for maintenance or establishment of staff privileges at an acute care hospital. At times during this litigation, plaintiff has taken the position that, pursuant to this exception, defendant is prohibited from exercising his active staff privileges at Riverside and is prohibited from using the lithotripter. It is contended that he may only retain his existing privileges and recommence practice at the hospital after the two-year covenant expires.

The word "maintain" can be read to mean "carry on." Hence, this exception allows defendant to carry on his practice at Riverside, including his specialty of kidney stone removal on the lithotripter.

As conceded by plaintiff, there is nothing in the covenant itself which precludes a patient from choosing defendant as his physician. The covenant only requires that he move his office five miles from Ohio Urology. Notwithstanding, genuine issues of material fact remain regarding whether specific enforcement of the covenant as construed herein would unduly prejudice defendant, his patients, or the community, as was the case in *Williams, supra.*

In making a reasonable determination, the trial court should apply the *Raimonde* test to determine if the employer has legitimate interests entitled to protection. See *Briggs, supra,* 140 Ohio St. at 507, 24 O.O. at 526, 45 N.E.2d at 761. For instance, Dr. Wise contends that defendant's new practice is drawing from his referrals. Defendant contends that Dr. Wise's referrals

come from around the state while local referrals constitute only a minimal part of Dr. Wise's practice.

■ The court may consider all pertinent factors affecting the reasonableness of the covenant, including those quoted in *Raimonde, supra,* 42 Ohio St.2d at 24, 71 O.O.2d at 13, 325 N.E.2d at 546, such as time and space limitations, confidentiality concerns, the extent of actual unfair competition, the impact on defendant's skills, any undue benefit obtaining from enforcement, and the practical impact on defendant's ability to practice adequately. *Rogers, supra,* 57 Ohio St.3d at 8, 565 N.E.2d at 543; *Karp v. Federated Dept. Stores, Inc.* (Nov. 29, 1977), Franklin App. No. 77AP–516, unreported.

■ As this court stated in *Levine v. Beckman* (1988), 48 Ohio App.3d 24, 548 N.E.2d 267, in addition to the burden on plaintiff of producing clear and convincing evidence as to each element in the *Raimonde* test, it is incumbent that the plaintiff prove irreparable injury or the existence of an actual threat of such injury. The parties' statement in their agreement that the employer is entitled to specific performance is not dispositive. The court should be mindful of the primary object of temporary and preliminary injunctive relief, which is to preserve the status quo pending final determination of the matter. *Arthur Young & Co. v. Kelly* (Apr. 28, 1988), Franklin App. No. 87AP–800, unreported, 1988 WL 41069.

The issues presented are not moot because we are considering temporary or preliminary injunctive relief of short duration. As this court recognized in *Columbus Medical Equip. Co. v. Watters* (1983), 13 Ohio App.3d 149, 13 OBR 182, 468 N.E.2d 343, the pendency of an appeal should not operate to divest a prevailing party of rights to enforcement of a valid covenant not to compete. The trial court is empowered to grant relief for a reasonable period of time sufficient to protect the employer's legitimate interests. *Rogers, supra,* 57 Ohio St.3d at 9, 565 N.E.2d at 544. If the employer is legally entitled to an injunction, then this right should be recognized and protected.

In sum, the trial court erred in holding that all noncompetition covenants between physicians are, *per se,* unenforceable on account of medical ethics. Though the covenant herein when strictly construed would not prohibit defendant from practicing at Riverside or using the lithotripter, genuine issues of fact remain regarding the enforceability of this covenant under the *Raimonde* standard. Consequently, defendant is not entitled to summary judgment and plaintiff is entitled to a hearing on the temporary injunctive relief prayed for.

Plaintiff's first assignment of error is not well taken, and the second assignment of error is well taken.

In the third assignment of error, plaintiff contends that the trial court did not independently and critically review the referee's report and recommendation as required by Civ.R. 53(E). Plaintiff maintains that the trial court merely "rubber stamped" the referee's report by summarily overruling plaintiff's objections and by adopting the judgment entry submitted by opposing counsel, instead of designing its own decision. Plaintiff emphasizes that the trial court's judgment entry of July 13, 1990 merely recited the language of Civ.R. 53(E)(5) to the effect that the referee's report was sufficient for the court to independently analyze the issue and that there was no error of law or other defect on the face of the report.

In this case, the referee based his report solely on a question of law: whether the restrictive covenant was unenforceable on the basis of public policy. The record does not show that the trial court did not independently review and determine the validity of the referee's report in accordance with Civ.R. 53.

Plaintiff's third assignment of error is not well taken.

In sum, as indicated above, plaintiff's first and third assignments of error are overruled, and plaintiff's second assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

BOWMAN and HENDERSON, JJ., concur.

JOHN W. HENDERSON, J., of the Clark County Court of Common Pleas, sitting by assignment.