OPINION.
{¶ 1} Plaintiff-appellant Single Source Packaging, LLC, appeals from a summary judgment rendered against it on its complaint for a preliminary and permanent injunction against defendant-appellee J.D. "Jack" Cain alleging that Cain breached an agreement between the parties by violating a covenant not to compete. Single Source contends that the trial court erred in denying Single Source's Motion for Summary Judgment and in granting Cain's Motion for Summary Judgment, because Cain violated the covenant not to compete by engaging in the same business as Single Source, in its marketing area, and by selling packaging materials to Single Source customers. We conclude that Cain did not violate the covenant not to compete, because he did not compete with Single Source by engaging in the same business as Single Source, in its marketing area, or by selling packaging materials to Single Source customers.
 {¶ 2} Single Source further contends that the trial court erred in holding that Single Source failed to show irreparable harm. We conclude that Single Source has failed to demonstrate, by clear and convincing evidence, actual or threatened irreparable harm, because it has failed to show a substantial threat of material injury.
 {¶ 3} Single Source also contends that the trial court erred in holding the covenant not to compete to be an employer-employee covenant, rather than a sale-of-business covenant, and in concluding that Single Source failed to show that it had a legitimate business interest that needed to be protected. Because we conclude that the evidence fails to demonstrate that Cain violated the covenant not to compete in any material respect, we find it unnecessary to determine whether the covenant not to compete is an employer-employee covenant, whether it is a sale-of-business covenant, or whether it is enforceable. In view of our disposition of Single Source's other assignments of error, we find it unnecessary to address these assignments of error.
 {¶ 4} We conclude that the trial court did not err in rendering summary judgment in favor of Cain. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 5} In 1992, defendant-appellee J.D. "Jack" Cain accepted the position of general manager of Western Ohio Packaging (WOPAC), a company engaged in the manufacture and sale of packaging materials. In 1995, Cain bought a 10% ownership interest in WOPAC and was promoted to the position of vice president. In 1996, Cain bought additional WOPAC shares, giving him a one-third ownership interest and making him one of three equal owners of WOPAC. In February of 1999, WOPAC was sold to plaintiff-appellant Single Source Packaging, LLC (Single Source) in a cash purchase with an option to buy unit shares. Cain received approximately 2.2 million dollars for his ownership interest in WOPAC. Cain exercised the option to buy unit shares and acquired approximately a seven percent interest in Single Source. As a condition of becoming a member of Single Source, Cain was required to sign a document entitled Unit Purchase and Transfer Restrictions Agreement, which included a non-compete clause. WOPAC became a division of Single Source, and Cain was appointed to the position of president of WOPAC.
 {¶ 6} In February, 2001, Single Source terminated Cain's employment. In July, 2001, Single Source and Cain entered into an agreement entitled Severance Agreement and Mutual Release of Claims (Severance Agreement). Pursuant to the Severance Agreement, Single Source agreed to pay Cain his salary until June 18, 2001, less appropriate withholding deductions, and agreed to reimburse Cain for any COBRA insurance costs incurred through August 12, 2001. Single Source further agreed to redeem Cain's Single Source units, as required upon the termination of Cain's employment with Single Source pursuant to the Unit Purchase and Transfer Restrictions Agreement, in the amount of $78,277.93. Upon payment of this sum by Single Source, both parties were released from any claims under the Unit Purchase and Transfer Restrictions Agreement. Single Source and Cain further agreed that the Unit Purchase and Transfer Restrictions Agreement would be terminated upon the execution of the Severance Agreement.
 {¶ 7} The Severance Agreement also contains a two-year covenant not to compete and related provisions. Paragraph 5 of the Severance Agreement provides, in pertinent part, that "Cain acknowledges that during the term of his employment by Single Source he has been introduced to or obtained knowledge about customers of Single Source and agrees that for a period of two (2) years from the Effective Date of this Agreement, he shall not induce any customer, former customer, employee, agent, broker, or supplier of Single Source or any other person or entity associated with or doing business with Single Source to terminate his or its relationship with Single Source or refrain from becoming associated or doing business with Single Source (or in any other manner to interfere with the relationship between Single Source and any such person or entity)." Paragraph 5 of the Severance Agreement defines "customer" as "any entity with whom Single Source has done business from February 26, 1999 through the Effective Date, including but not limited to Honda and Honda related business" as well as specific Single Source customers identified in an attachment to the Severance Agreement. Paragraph 5 of the Severance Agreement further provides that "Cain and any entity with whom he is associated may compete with Single Source with regard to Avon Products and Grippo's Foods, Inc."
 {¶ 8} In addition, paragraph 6 of the Severance Agreement provides that "[f]or a period of two (2) years from the Effective Date of this Agreement, Cain agrees not to enter into the employ of, render any services or assistance to, or acquire any financial interest in, any person or business entity, whether in the capacity of officer, member, trustee, administrator, manager, independent contractor, principal, agent, partner, officer, director, employee, consultant, or shareholder, or otherwise, which person or entity competes with Single Source in the manufacture or sale of packaging products and related materials, but nothing in this Agreement shall prohibit Cain or any entity with whom he is associated from purchasing packaging products, related materials and services from any person or entity that competes with Single Source in the manufacture or sale of packaging products and related materials." Paragraph 18 of the Severance Agreement provides that a violation of the Severance Agreement "would result in irreparable harm to Single Source thereby entitling Single Source to seek injunctive relief in addition to monetary damages."
 {¶ 9} In December, 2001, Cain and Andrew Fields formed Innovative Packaging, LLC (Innovative) with each having a fifty percent ownership interest. Innovative, located in Lima, Ohio, is a sheet metal plant that produces packaging materials. On May 17, 2002, Innovative sold corrugated boxes valued at $652.33 to Camelot Manufacturing (Camelot), a past customer of WOPAC. The sale to Camelot was obtained by Cain's father, Donald Cain, who was retired, but continued to work on an occasional basis brokering packaging accounts, and had never been an employee of Innovative. About six weeks later, Camelot called Innovative to reorder. Upon learning that WOPAC was then soliciting Camelot's business, Cain informed Camelot that Innovative could not fill the order and suggested that Camelot order from WOPAC.
 {¶ 10} Fields also conducted business with Cooper Foods, a Single Source customer. Fields, a former employee of Inland Container, had previously conducted business with Cooper Foods before the formation of Innovative. When Fields' employment with Inland Container terminated, Fields continued to sell to Cooper Foods.
 {¶ 11} Single Source brought this action for a preliminary and permanent injunction against Cain, alleging that Cain breached the Severance Agreement by violating the two-year covenant not to compete. Cain and Single Source both filed motions for summary judgment. The trial court rendered summary judgment in favor of Cain. After finding the non-compete clause in the Severance Agreement to be an employer-employee covenant, rather than a sale-of-business covenant, the trial court concluded that Single Source had failed to show that it had a legitimate business interest requiring protection. From the summary judgment rendered against it, Single Source appeals.
 II {¶ 12} Single Source's First, Second, Third, Fourth, and Eighth Assignments of Error are as follows:
 {¶ 13} "The trial court erred in holding that `the parties obviously intended that Cain would operate' a business similar to Single Source's, as long as he did not compete.
 {¶ 14} "The trial court erred in holding that Single Source does not allege that Innovative has sold any products to any existing Single Source customers.
 {¶ 15} "The trial court erred in holding that Single Source and Innovative operate in different marketing areas.
 {¶ 16} "The trial court erred in holding that Single Source showed no factual information in support of its allegations of irreparable harm.
 {¶ 17} "The trial court erred in denying Single Source's motion for summary judgment and in granting Cain's motion for summary judgment."
 {¶ 18} Each of the above assignments of error essentially contends that the trial court erred in rendering summary judgment against Single Source upon its claims. We review the appropriateness of summary judgment de novo, and follow the standards as set forth in Civ.R. 56. Koos v.Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,1998-Ohio-389, 696 N.E.2d 201, at ¶ 3 (citation omitted).
 {¶ 19} The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists on the essential elements of the nonmoving party's claims. Dresher v. Burt, 75 Ohio St.3d 280,293, 1996-Ohio-107, 662 N.E.2d 264. The moving party's initial burden is not discharged by making mere conclusory assertions, but must be based on some evidence demonstrating that the nonmoving party has no evidence to support its claims. Id. Summary judgment must be denied if the moving party fails to satisfy its initial burden. Id. If the moving party satisfies its initial burden, the nonmoving party has a reciprocal burden of setting forth specific facts demonstrating that a genuine issue of material fact exists to prevent summary judgment. Id. The nonmoving party may not rest on mere allegations or denials of his pleadings. Id. Summary judgment is appropriate if the nonmoving party fails to satisfy this burden. Id. With this standard in mind, we now address Single Source's contentions in a manner that best facilitates our resolution of this appeal.
 {¶ 20} Single Source contends that Cain violated the two-year covenant not to compete in the Severance Agreement by competing with Single Source. Single Source asserts that Cain competed by engaging in the same business as Single Source, and by selling packaging materials to Single Source customers. Single Source further maintains that Cain is competing because he is conducting business in Single Source's marketing area, which includes Michigan, Indiana, Ohio, and Northern Kentucky. Single Source contends that an injunction should be granted because Cain's violation of the covenant not to compete contained in the Severance Agreement has resulted in actual, irreparable harm, in that Cain has acquired customers of Single Source.
 {¶ 21} In order to determine whether Cain violated the covenant not to compete in the Severance Agreement, we must first resolve whether Cain competed. Paragraph 6 of the Severance Agreement prohibits Cain, for a period of two years, from being associated with any entity or person that "competes" with Single Source in the manufacture or sale of packaging materials. Paragraph 5 of the Severance Agreement permits Cain, and any entity with whom he is associated, to compete with Single Source by doing business with Avon Products and Grippo's Foods, Inc.
 {¶ 22} "The interpretation of a written contract is a matter of law to be determined by the court. The paramount objective in construing such a written agreement is to ascertain the parties' intent. The agreement must be given a just and reasonable construction that carries out the intent of the parties as evidenced by the contractual language. The parties' intent is presumed to reside solely within the language employed in the agreement. Words and phrases appearing in a contract that are not specifically defined therein should be given their common, ordinary, and usual meaning. It is of course well settled that the fact that parties may adopt conflicting interpretations of a contract between them while involved in litigation will not create ambiguity or a basis for unreasonable interpretation of the language and original intent of the parties where no such ambiguity should reasonably be found." OhioWater Dev. Auth. v. W. Res. Water Dist., 149 Ohio App.3d 155,2002-Ohio-4393, 776 N.E.2d 530, at ¶ 25 (citations omitted).
 {¶ 23} The intent of Single Source and Cain can be ascertained from the language of the Severance Agreement. Paragraph 5 of the Severance Agreement evidences an intent that Cain may operate a business similar to that of Single Source, because it does not "restrict or prohibit Cain or any entity with whom he is associated from doing business with Avon Products and Grippo's Foods, Inc., and further agrees that Cain and any entity with whom he is associated may compete with Single Source with regard to Avon Products and Grippo's Foods, Inc." Thus, Cain did not compete merely by engaging in the same business as Single Source.
 {¶ 24} Single Source also contends that Cain competed by selling packaging materials to Single Source customers, Camelot and Cooper Foods. Competition is defined as "[r]ivalry between two or more businesses striving for the same customers or market." Webster's II New College Dictionary (1995) 229. Thus, two primary considerations to be considered in determining whether competition has occurred in violation of a covenant not to compete are whether the covenantor is doing business in the same marketing area with the same potential customers of the covenantee. See Advertising Distributors of America v. Nurrenbrock (Aug. 7, 1981), Montgomery App. No. 7020, 1981 WL 2871, at *2.
 {¶ 25} Single Source asserts that Fields' sale of packaging materials to Cooper Foods was in competition with Single Source, because Cooper Foods was a Single Source customer. Single Source maintains that Innovative supplied Fields with an automobile, which Fields used to make sales calls, and that Fields did not reimburse Innovative for the percentage of sales calls made on his own behalf. Single Source contends that the sale of packaging materials to Cooper Foods was therefore in violation of Cain's covenant not to compete contained in the Severance Agreement.
 {¶ 26} Fields is not restrained by the Severance Agreement between Cain and Single Source from doing business on his own behalf with one of Single Source's customers. Fields had previously conducted business with Cooper Foods when he was an employee of Inland Container, before the formation of Innovative. When Fields' employment with Inland Container terminated, Fields continued to sell to Cooper Foods on his own behalf. Although Fields did not reimburse Innovative for the percentage of sales calls made on his own behalf, Innovative's accountant arranged for any use of the automobile provided to Fields for purposes not related to Innovative's business to be reported to the Internal Revenue Service as taxable income. Fields conducted business with Cooper Foods on his own behalf, with no connection to Cain.
 {¶ 27} Fields also acted as a broker for Georgia-Pacific to sell packaging materials to Cooper Foods. The covenant not to compete in the Severance Agreement prohibits the manufacture or sale of packaging materials, not the brokering of packaging materials. Thus, Cain did not violate the covenant not to compete in the Severance Agreement when Fields sold packaging materials to Cooper Foods, a Single Source customer, on his own behalf.
 {¶ 28} Single Source also asserts that Innovative's one-time sale of packaging materials to Camelot constituted "competing" with Single Source, because Camelot was a Single Source customer. It is undisputed that at the time of the May 17, 2002 sale to Camelot by Innovative, Camelot had not been a customer of WOPAC since 2001. WOPAC did not solicit Camelot's business again until after the May 17, 2002 sale to Camelot by Innovative. This evidence is uncontradicted and is consistent with the affidavit of Charles Froning, the president of Camelot, offered as evidence by Single Source. Froning merely stated that Camelot had purchased packaging materials from WOPAC since 1998, and as recently as July 9, 2002. However, Froning's affidavit does not contradict the evidence that WOPAC stopped doing business with Camelot in 2001 and did not resume doing business with Camelot until after the May 17, 2002 sale to Camelot by Innovative.
 {¶ 29} In addition, the evidence in the record establishes that Innovative has refrained from purposely soliciting or selling to Single Source customers. When Camelot called Innovative to reorder on or about July 9, 2002, Cain informed Camelot that Innovative could not fill the order because of WOPAC's solicitation of Camelot. Cain referred Camelot to WOPAC. On another occasion, Fields ceased contact with Apex Bag upon learning that Apex Bag was a Single Source customer. This undisputed evidence of Innovative's policy of refraining from soliciting or selling to Single Source customers is consistent with Cain's assertion that Camelot was not a customer of Single Source at the time of the May 17, 2002 sale to Camelot by Innovative.
 {¶ 30} Single Source contends that Cain competed with Single Source by doing business in Single Source's marketing area, which included Michigan, Indiana, Ohio, and Northern Kentucky. Single Source offers the affidavit of Glenn Kilburn (Kilburn), the general manager of WOPAC, as evidence that Cain was competing with Single Source in Single Source's marketing area. Kilburn stated that after hearing the deposition of Cain, it was his "opinion that Innovative Packaging is directly competing with Single Source in Single Source's market area selling the same products sold by Single Source." Kilburn stated that Single Source's market area included Michigan, Indiana, Ohio and Northern Kentucky.
 {¶ 31} Any covenant not to compete is an agreement in restraint of trade, is therefore disfavored in the law, and must be construed strictly. Morgan Lumber Sales Co. v. Toth (1974), 41 Ohio Misc. 17, 19;Westco Group, Inc. v. City Mattress (Feb. 15, 1985), Montgomery App. No. 12619, 1985 WL 144712, at * 3; Ohio Urology, Inc. v. Poll (1991),72 Ohio App.3d 446, 453, 594 N.E.2d 1027. The covenant not to compete in the case before us did not prohibit Cain from engaging in a particular business in a particular area; it prohibited Cain from "competing" with Single Source. In our view, Cain would have to be attempting to sell to persons with whom Single Source either: (1) was doing business; or (2) was seeking to do business, in order to be competing with Single Source, when "competing" is given an appropriately strict construction.
 {¶ 32} When strictly construed, the covenant not to compete in the Severance Agreement did not prohibit Cain from conducting the business in Lima and north of Lima, Ohio, of which Single Source complains. Furthermore, Civ.R. 56 provides that the moving party's initial burden on a motion for summary judgment is not discharged by making mere conclusory assertions. Dresher, 75 Ohio St.3d at 293. Single Source's only evidence that Cain competed in its market area is Kilburn's conclusory statement.
 {¶ 33} Single Source further contends that an injunction should be granted because it has demonstrated actual irreparable harm, in that Cain has violated the covenant not to compete in the Severance Agreement and has acquired customers of Single Source. When seeking the equitable remedy of an injunction, the plaintiff must show, by clear and convincing evidence, actual or threatened irreparable harm. Poll,72 Ohio App.3d at 454. "Irreparable harm exists when there is a substantial threat of material injury which cannot be adequately compensated through monetary damages." Restivo v. Fifth Third Bank (1996), 113 Ohio App.3d 516, 521,681 N.E.2d 484 (citations omitted). "Equity will not interfere where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown. Such relief will be refused where the injury is so slight as to bring the case within the maxim `de minimus non curat lex,' where there is no appreciable damage. . . ." Id. at 520. Single Source offers as evidence of irreparable harm the affidavit of Kilburn, in which Kilburn avers that "Single Source would be seriously injured if a former owner is allowed to set up a sheet plant in Lima, Ohio in direct competition with Single Source within a short time of leaving Single Source's employ."
 {¶ 34} With this evidence alone, Single Source has failed to demonstrate, by clear and convincing evidence, actual or threatened irreparable harm. It is undisputed that Innovative's $652.33 sale to Camelot was minuscule, representing only .007%, or seven one-hundred-thousandth, of WOPAC's annual sales and .102%, just over one one-thousandth, of Innovative's annual sales. Cain also refrained from purposely soliciting, or selling to, Single Source customers, as evidenced by his refusal to sell to Camelot upon learning that WOPAC was soliciting Camelot and his subsequent referral of Camelot to WOPAC. In addition, the Camelot sale by Innovative was arranged by Cain's father, Donald Cain, who is retired, but continues to work on an occasional basis brokering packaging accounts, and has never been an employee of Innovative. Thus, Single Source failed to show a substantial threat of material injury or irreparable harm. Single Source also failed to satisfy its initial burden in its motion for summary judgment, because Kilburn's statement is a merely conclusory assertion.
 {¶ 35} We conclude that Cain did not violate the covenant not to compete in the Severance Agreement, because he did not compete with Single Source. There is no genuine issue of material fact whether Cain violated, or manifested an intent to violate, the covenant not to compete in the Severance Agreement. The evidentiary materials submitted by Cain in support of his motion for summary judgment establish, as a matter of law, that Cain did not violate the covenant not to compete in the Severance Agreement. The evidentiary materials submitted by Single Source in support of its motion for summary judgment fail to establish, as a matter of law, that Cain violated the covenant not to compete in the Severance Agreement. Accordingly, the trial court did not err in denying Single Source's Motion for Summary Judgment and in granting Cain's Motion for Summary Judgment.
 {¶ 36} Single Source's First, Second, Third, Fourth, and Eighth Assignments of Error are overruled.
 III {¶ 37} Single Source's Fifth, Sixth and Seventh Assignments of Error are as follows:
 {¶ 38} "The trial court erred in holding that the covenant in the case sub judice is more properly considered an `employer-employee' covenant rather than a covenant connected with the sale of a business.
 {¶ 39} "The trial court erred in holding that Single Source failed to show that it had a legitimate business interest to protect.
 {¶ 40} "The trial court erred in failing to hold that Cain has conceded that the covenant, as he interprets it, is enforceable."
 {¶ 41} Cain argued, and the trial court agreed, that the covenant not to compete in this case was properly viewed as an employer-employee covenant, which requires a legitimate business reason for restricting unfair competition, not just ordinary competition. Single Source, in these assignments of error, argues that the trial court erred in deeming the covenant not to compete as constituting an employer-employee covenant not to compete.
 {¶ 42} Because we conclude that Cain did not violate the covenant not to compete in the Severance Agreement, we find it unnecessary to determine whether the covenant not to compete in this case is more properly viewed as an employer-employee covenant, as a sale-of-business covenant, as some other kind of covenant not to compete, or, for that matter, whether it is enforceable. Therefore, Single Source's Fifth, Sixth and Seventh Assignments of Error are overruled as moot.
 IV {¶ 43} All of Single Source's Assignments of Error having been overruled, the judgment of the trial court is affirmed.
 V {¶ 44} Cain's sole Assignment of Error is as follows:
 {¶ 45} "Pursuant to R.C. § 2505.22, Cain states that, in the event this court reverses the trial court's decision in whole or in part, the trial court erred in overruling Cain's motion for default judgment."
 {¶ 46} Our resolution of the previous assignments of error renders Cain's sole Assignment of Error moot, since we are not reversing the judgment of the trial court, the express precondition for Cain's Assignment of Error. Therefore, we need not address his arguments. Cain's sole Assignment of Error is overruled, as moot.
BROGAN and WOLFF, JJ., concur.