OHIO WATER DEVELOPMENT AUTHORITY, Appellee,

v.

WESTERN RESERVE WATER DISTRICT, Appellant; Zak et al., Appellees.

Ohio Water Development Authority, Appellant,

v.

Western Reserve Water District et al., Appellees.

[Cite as *Ohio Water Dev. Auth. v. W. Res. Water Dist.*, 149 Ohio App.3d 155, 2002-Ohio-4393.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 01AP–1244 and 01AP–1276.

Decided Aug. 27, 2002.

Calfee, Halter & Griswold L.L.P., Mark I. Wallach and Colleen Moran O'Neil, for appellee cross-appellant Ohio Water Development Authority.

Oberholtzer, Filous & Lesiak and John C. Oberholtzer, for appellant cross-appellee Western Reserve Water District.

Isaac, Brant, Ledman & Teetor and Charles Brant, for appellee Jack Schira.

DESHLER, Judge.

{¶ 1} Appellant, Ohio Water Development Authority ("OWDA"), appeals from a judgment of the Franklin County Court of Common Pleas overruling appellant's objections to a magistrate's decision, which held that appellee Western Reserve Water District ("Western Reserve") is not obligated to vote an assessment to provide repayment of funds advanced to it by OWDA. Western Reserve has cross-appealed, asserting that the trial court erred in considering the OWDA's objections to the magistrate's decision, as they were not timely filed.

{¶ 2} The present appeal arises from a lengthy and fairly complicated factual and procedural context. Fortunately, the parties were able to arrive at a joint stipulation of facts, which was presented to the trial court; the following summary is drawn largely from this joint stipulation.

{¶ 3} Appellant OWDA is a state agency charged with assisting in the development of local water systems in the state of Ohio. Pursuant to R.C. 6121.04(E), OWDA is authorized to lend funds to governmental agencies to assist in the acquisition or construction of water supply and distribution projects.

{¶ 4} Appellee Western Reserve was created in 1991 to develop and provide potable water to residential and commercial areas, including the unincorporated portions of Brunswick Hills Township, in Medina County. Western Reserve

anticipated drawing upon the resources of OWDA as part of its developmental plan, and pursuant to this, in February 1992, the parties entered into a "Cooperative Agreement for State Planning Project," under which OWDA agreed to lend up to $510,000 to Western Reserve, and Western Reserve agreed to certain terms of repayment, which are contested in the present case.

{¶ 5} The OWDA funds were duly disbursed to Western Reserve for engineering studies and other preparation for development of a water system, but some five years later, after Western Reserve had obtained and spent the entire $510,000, Western Reserve was forced to conclude that construction would never begin because no suitable water source had been developed. Despite this failure to construct a water system for its residents, Western Reserve remained obligated to repay the loans made by OWDA under the cooperative agreement. In 1997, after planning had been completed and it was apparent that no suitable water source would be found, Western Reserve passed a resolution of necessity and a resolution of assessment. In these resolutions, it was stated that the construction of the water service project remained necessary and beneficial to residents of the district and that construction would be undertaken upon identification of a suitable water source, despite the absence thereof at the conclusion of the planning phase and the time of the passing of the two resolutions.

{¶ 6} Prior to entering into the cooperative agreement, Western Reserve held a meeting in which a resolution was unanimously approved, providing that if the proposed water service project did not proceed through construction, funds borrowed by OWDA for planning purposes would be repaid to OWDA by levying a property assessment on property owners within Western Reserve's district.

{¶ 7} After passage of the 1997 resolutions, residents of the district, objecting to the possibility of an assessment levied by Western Reserve for payment of expenses of the water project, which had yet to come to fruition, filed an administrative appeal in the Medina County Court of Common Pleas asserting that the 1997 resolutions did not comply with R.C. 6119.58 governing expenditure of funds for planning purposes by a water district. The Medina County Court of Common Pleas eventually held that the resolutions were invalid because R.C. 6119.58 required that such resolutions of necessity be passed prior to the actual expenditure of the funds to be recouped through the assessment. On appeal to the Ninth Appellate District, the matter was resolved on different grounds. The Ninth District Court of Appeals held that the resolutions were invalid because Western Reserve had failed to adequately describe the water resource project in the resolution of necessity, as required by R.C. 6119.58. The court did not address the question whether a resolution of necessity must be passed prior to the expenditure of the planning funds. *Macko v. W. Res. Water Dist.* (Dec. 9,

1988), Medina App. No. 2774–M, 1998 WL 852545, discretionary appeal not allowed in (1999), 85 Ohio St.3d 1460, 708 N.E.2d 1013.

{¶ 8} OWDA then filed the present action in the Franklin County Court of Common Pleas to recover the original loan plus accrued interest from Western Reserve and sought injunctive and declaratory relief. It being uncontested that Western Reserve had no significant assets or cash, no revenue from operations, and no immediate prospect of such revenue, OWDA sought an injunction to obligate Western Reserve to pass a special assessment to generate the income to repay the loans. Also before the trial court were various other claims concerning Western Reserve trustees individually and obligations of a third-party defendant, the Ohio Government Risk Management Plan, to provide a defense or coverage for Western Reserve in the action. All these subsidiary issues have been decided in the trial court without being raised in this appeal and need not be further discussed.

{¶ 9} The matter was referred to a magistrate, who based his decision on the parties' joint stipulation and briefing of applicable law. Examining the language of the cooperative agreement, the magistrate concluded that OWDA could not require the use of either general resources or new assessments for repayment of the loan, but that Western Reserve could voluntarily use general resources or assessments to repay the loan obligation to OWDA if these resources and assessments both existed and were lawful. The magistrate accordingly concluded that in the current circumstances, Western Reserve could not be forced to enact a new assessment to replace the 1997 resolutions, which had been declared unlawful, in order to produce the income necessary to repay the loan to OWDA.

{¶ 10} OWDA filed objections to the magistrate's decision. The timeliness of these objections was questioned by Western Reserve. The trial court found that the objections, although not strictly timely according to rule, would nonetheless be considered in the interest of reaching the merits of the matter. The trial court then proceeded to slightly modify the magistrate's conclusions without altering the outcome.

{¶ 11} OWDA has timely appealed the trial court's judgment and brings the following assignment of error:

{¶ 12} "The trial court erred in concluding that Western Reserve Water District is not liable to Ohio Water Development Authority under the Cooperative Agreement for State Planning Project and, further, erred in failing to issue an injunction ordering Western Reserve Water District to pass a Resolution of Assessment to recoup the funds owed to Ohio Water Development Authority under the Cooperative Agreement for State Planning Project."

{¶ 13} Western Reserve has timely filed a cross-appeal and brings the following assignment of error:

{¶ 14} "The trial court erred in considering the cross-appellee's objections to the magistrate's decision which were untimely filed pursuant to Civil Rule 53(E)."

{¶ 15} We will first address Western Reserve's cross-appeal, which attacks the timeliness of OWDA's objections to the magistrate's decision in the trial court.

{¶ 16} The magistrate filed his decision in its final form on February 28, 2001. Civ.R. 53(E)(3)(a) provides that objections to magistrates' decisions shall be filed within 14 days of the filing of the decision. OWDA's objections, although purportedly mailed on March 14, 2001, were not filed by the Franklin County Clerk of Courts until March 19, 2001, some five days out of rule. OWDA argued before the trial court that its objections had been designated for mailing by overnight express service on March 14, 2001, but had been mistakenly sent by regular mail to the court. OWDA further argued that there was at the very least a split in authority concerning the application of Civ.R. 6(E), the three-day mailing rule, to Civ.R. 53(E) regarding the filing of objections and contended that the clerical mistake in mailing, coupled with the three days' latitude under Civ.R. 6(E), should excuse OWDA from timely compliance in filing the objections. The trial court found that the circumstances constituted excusable clerical error on the part of OWDA, overruled Western Reserve's motion to strike the objections, and proceeded to consider the merits of the objections.

{¶ 17} The trial court's grant of leave to file objections outside the 14–day period of Civ.R. 53(E)(3)(a) will not be reversed absent an abuse of discretion. *Russell v. Russell* (1984), 14 Ohio App.3d 408, 14 OBR 526, 471 N.E.2d 810. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 [5 OBR 481, 450 N.E.2d 1140]." Although Western Reserve correctly points out that the split in authority among Ohio's appellate courts regarding the applicability of Civ.R. 6(E), enlarging mailing time by three days, to objections filed under Civ.R. 53(E) has been resolved by the Ohio Supreme Court in *Duganitz v. Ohio Adult Parole Auth.* (2001), 92 Ohio St.3d 556, 751 N.E.2d 1058, in which the Supreme Court held that Civ.R. 6(E) does not apply to the filing of objections, we do not consider resolution of that question to be conclusive on the present facts. The trial court was confronted with circumstances in which a small enlargement of time resulted in the trial court's being permitted to address and resolve issues arising out of the magistrate's decision and fully explore the merits as they pertained to all parties. No discernible prejudice, other than consideration of the objections themselves, can be found on the part of Western Reserve from the trial court's

decision to allow the objections to be filed out of rule. Whether confusion over the applicability of Civ.R. 6(E) was justified or not, the trial court's finding of excusable clerical error in the case was not an abuse of discretion and does not warrant reversal on this question. We accordingly find that the trial court did not abuse its discretion in overruling Western Reserve's motion to strike OWDA's objections to the magistrate's decision. Therefore, the sole assignment of error in appellee Western Reserve's cross-appeal is overruled.

{¶ 18} We now turn to OWDA's assignment of error, which raises the twin issues of whether Western Reserve has an unqualified obligation to repay the borrowed funds and what measures Western Reserve may be compelled to adopt, including the imposition of a new assessment on its residents, in order to repay the borrowed funds.

{¶ 19} The cooperative agreement entered into by the parties contained the following pertinent language:

{¶ 20} "Subject to the further provisions hereinafter set forth, [Western Reserve] agrees to and shall pay the Project Participation Principal Amount on or before the completion of the Contract Period of Years at the Contract Interest Rate from the date of disbursement by the OWDA of each payment hereunder to the date of final repayment thereof solely from the revenues of [Western Reserve's] Utility.

{¶ 21} "The obligation of [Western Reserve] to pay the charges set forth shall not be assignable, and [Western Reserve] shall not be discharged therefrom, without the prior written consent of the OWDA. * * *

{¶ 22} "Anything in this Agreement to the contrary notwithstanding, neither the general resources of [Western Reserve] shall be required to be used, nor the general credit of [Western Reserve] pledged for the performance of any duty under this Agreement, but any payment to be made under this Agreement shall be made only from the revenues of [Western Reserve's] Utility; provided, however, that, if otherwise lawful [sic], and the Special Assessment Funds, in any; provided, however, that, if otherwise lawful [sic], nothing herein shall be deemed to prohibit [Western Reserve] from using, of its own volition, any of its general resources for the fulfillment of any of the terms and conditions of this Agreement."

{¶ 23} The trial court, as have the parties, struggled to explain the obvious typographical error in the last paragraph above, in which the phrase "however, that, if otherwise lawful" is obviously redundant in one or the other of its two uses. Based upon which of the two superfluous phrases is omitted, the trial court concluded, different meanings could be ascribed to the paragraph, either of which, however, precluded an obligation on the part of Western Reserve to enact

a special assessment to repay the loan. The trial court, after deleting the duplicative language, concluded that the paragraph should be given the following interpretation: "any payments owed to plaintiff OWDA under the agreement were to be made from the revenues of defendant Western Reserve or any assessments, *if they so existed*. Defendant Western Reserve also had the option to voluntarily use its general resources for the fulfillment of the agreement." Since the 1997 assessment had been disallowed by the Ninth District in *Macko*, no lawful assessments existed, and Western Reserve therefore was without resources to repay the loan.

{¶ 24} Although the interpretation adopted by the trial court is certainly one permissible reading of the paragraph in question if it is examined in isolation, we find that a broader interpretation of the agreement, in its entirety, must be made in order to ascertain the intentions of the parties and consequently the effect of the agreement.

{¶ 25} The interpretation of a written contract is a matter of law to be determined by the court. *Alexander v. Buckeye Pipe Line Co.* (1977), 49 Ohio St.2d 158, 3 O.O.3d 174, 359 N.E.2d 702, paragraph one of the syllabus. The paramount objective in construing such a written agreement is to ascertain the parties' intent. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 53, 544 N.E.2d 920. The agreement must be given a just and reasonable construction that carries out the intent of the parties as evidenced by the contractual language. *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. The parties' intent is presumed to reside solely within the language employed in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Words and phrases appearing in a contract that are not specifically defined therein should be given their common, ordinary, and usual meaning. *Monsler v. Cincinnati Cas. Co.* (1991), 74 Ohio App.3d 321, 329, 598 N.E.2d 1203. It is of course well settled that the fact that parties may adopt conflicting interpretations of a contract between them while involved in litigation will not create ambiguity or a basis for unreasonable interpretation of the language and original intent of the parties where no such ambiguity should reasonably be found. *Steward v. Champion Internatl. Corp.* (C.A.11, 1993), 987 F.2d 732, 734. The question of whether ambiguity or uncertainty in the language of a contract requires resort to extrinsic evidence to ascertain the intent of the parties is a question of law for the court. *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262.

{¶ 26} In the present case, looking at the cooperative agreement in its entirety, as well as the specific language excerpted above, it is clear that the intent of the parties was to create an unconditional obligation by Western

Reserve to repay loans from OWDA. The development funds advanced by OWDA were to be repaid "on or before the completion of the contract period of years at the contract interest rate from the date of disbursement by the OWDA of each payment hereunder." "The obligation of [Western Reserve] to pay the charges set forth shall not be assignable, and * * * shall not be discharged * * * without the prior written consent of the OWDA." Nowhere in the written agreement is any conditional nature ascribed to the obligation to repay, either upon the ultimate construction of a water system serving the residents or the receipt of revenues therefrom. While the contract does state that repayment may be made "solely from the revenues of the * * * utility," the term "revenues" is subsequently modified in a more specific paragraph concerning repayment terms:

{¶ 27} "Anything in this Agreement to the contrary notwithstanding, neither the general resources of [Western Reserve] shall be required to be used, nor the general credit of [Western Reserve] pledged for the performance of any duty under this Agreement, but any payment to be made under this Agreement shall be made only from the revenues of [Western Reserve's] Utility; provided, however, that, if otherwise lawful [sic], and the Special Assessment Funds, in any; provided, however, that, if otherwise lawful [sic], nothing herein shall be deemed to prohibit [Western Reserve] from using, of its own volition, any of its general resources for the fulfillment of any of the terms and conditions of this Agreement."

{¶ 28} This, of course, is the paragraph containing the duplicative use of the term "however, that, if otherwise lawful." Attempting to give the paragraph its most plain and rational reading in the face of this obvious clerical error while harmonizing it with the overall intent of the parties evidenced in the balance of the cooperative agreement, we find that it is largely irrelevant whether the first, second, or even both instances of the duplicative phrase are omitted. It is clearly intended that the funds obtained from OWDA were to be repaid; while resort to the general resources of Western Reserve is discretionary, special assessment funds are clearly contemplated as an alternative to general revenues, if they were not realized through completion of the project: "Any payment to be made under this agreement shall be made only from the revenues of the * * * utility * * * and the special assessment funds, if any." While Western Reserve would have us read "if any" as limiting repayment from special assessment funds to those assessments already in existence, without creating an obligation to put in place such an assessment to provide alternative payment in the absence of other revenues, we find this limited interpretation of the language to entirely controvert the general tenor of the agreement, which provides for unconditional repayment of the funds advanced by OWDA.

{¶ 29} Furthermore, if we turn to extrinsic evidence to ascertain the intent of the parties, Western Reserve's conduct throughout its relationship with OWDA evidences its intent to repay the borrowed funds through assessment. Western Reserve's "Plan for Provision of Services," as approved by the Medina County Court of Common Pleas at Western Reserve's inception as a local water district, "provided that funds borrowed from OWDA would be repaid either by income from monthly user fees from the proposed water service project and/or by assessing the benefited property owners, regardless of whether he/she uses the available service." Amended Joint Stip. of Facts, at ¶ 4. Western Reserve subsequently approved its resolution No. 91–7, which provided that "if the water service project did not proceed through construction, Western would repay funds borrowed by OWDA by levying a property assessment on all properties within Western's district." Id. at ¶ 5. Western Reserve subsequently enacted the 1997 resolutions, again attempting to impose an assessment on its residents to raise the funds necessary to repay the OWDA loans.

{¶ 30} Based therefore upon our interpretation of both the contract language itself and the extrinsic evidence arising from the performance of the parties under the agreement, it is clear that Western Reserve had an obligation to repay the funds, whether from revenues or special assessments. In the absence of revenues, the obligation to impose the necessary assessments can be found under the contract. We therefore find that the trial court erred in concluding that Western Reserve could excuse its performance under the cooperative agreement and avoid repaying the loans from OWDA by simply pointing to the absence of any existing assessment. We conclude that the trial court erred in denying OWDA the relief sought, and OWDA's assignment of error is accordingly sustained.

{¶ 31} In summary, OWDA's assignment of error is sustained, Western Reserve's assignment of error on cross-appeal is overruled, the judgment of the Franklin County Court of Common Pleas is reversed, and the matter is remanded to the trial court for further proceedings to provide appropriate relief to OWDA and ensure Western Reserve's performance under the cooperative agreement.

Judgment reversed
and cause remanded.

Tyack, P.J., and Peggy Bryant, J., concur.