# United States Court of Appeals
## For the First Circuit

No. 09-1255

JOHN S. CUNNINGHAM,
on behalf of himself and all others similarly situated;
BRIAN M. DELAURENTIS,
on behalf of himself and all others similarly situated,

Plaintiffs, Appellants,

v.

NATIONAL CITY BANK,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Boudin, Stahl, and Lipez, Circuit Judges.

Gregory B. Linkh, with whom Jacqueline Sailer, David Pastor, and Gilman and Pastor, LLP, were on brief for appellants.
James W. McGarry, with whom Brook L. Ames and Goodwin Procter LLP, were on brief for appellee.

November 25, 2009

**STAHL**, <u>Circuit Judge</u>.  Plaintiffs-Appellants John Cunningham and Brian DeLaurentis (collectively, "Plaintiffs"), recipients of a home equity line of credit ("HELOC"), filed a putative class action against the issuer, National City Bank ("National City"), for breach of contract, violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u>, and violation of the Massachusetts deceptive business practices law, Mass. Gen. Laws ch. 93A ("Chapter 93A").  National City moved to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the district court granted the motion as to all counts.[1]  We affirm.

## I.

Because this appeal follows the granting of a motion to dismiss, we state the facts as they are set forth in the amended complaint, <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 25 (1st Cir. 2006), and draw all reasonable inferences in the light most favorable to Plaintiffs, the non-moving party.  <u>Andrew Robinson Int'l, Inc.</u> v. <u>Hartford Fire Ins. Co.</u>, 547 F.3d 48, 51 (1st Cir. 2008).

---

[1]Before the December 16, 2008 hearing on National City's Motion to Dismiss, the district court informed the parties of its intention to convert the motion to one for summary judgment under Fed. R. Civ. P. 12(d).  However, the court noted in its January 7, 2009 order ruling on the motion that the practical effect of the Rule 12(d) conversion was a nullity, as the court had no reason to resort to extrinsic evidence when evaluating the terms of the parties' agreement.  The court stated that "[t]he outcome . . . would be the same under either a motion to dismiss or a summary judgment standard."

On November 26, 2004, Plaintiffs jointly obtained a HELOC from National City in the amount of $100,000. The HELOC was for a term of ten years, and it was secured by Plaintiffs' jointly-owned home in Provincetown, Massachusetts. The specific terms of the HELOC are set out in a document titled "Equity Reserve Agreement - National Home Equity" (the "Agreement").

For several years, Plaintiffs drew on the HELOC and made timely repayments. As of December 31, 2007, there were no amounts due under the Agreement. On January 7, 2008, Plaintiffs drew $50,000 on the HELOC (the "January withdrawal"). National City sent Plaintiffs an account statement indicating that the due date for a minimum payment on the January withdrawal was February 22, 2008.[2] On February 4, 2008, Plaintiffs drew an additional $49,500 on the HELOC (the "February withdrawal").

On February 27, 2008, Cunningham initiated a payment to National City through Citibank's online banking service. That payment, in the amount of $60,050, was intended to repay the January withdrawal in full and the February withdrawal in part. It was posted to Plaintiffs' National City HELOC account on March 3, 2008.

In a letter dated February 29, 2008, National City informed Plaintiffs that their payment was past due and as a result

---

[2]The record contains no information as to the amount of the minimum payment.

their HELOC account privileges were being terminated.[3]  The letter explained that National City was taking this action "in accordance with the section of [the] agreement called 'Termination of Equity Reserve Line' due to [Plaintiffs'] failure to meet the [HELOC's] repayment requirements."

After unsuccessfully seeking reinstatement of the HELOC with National City, Plaintiffs commenced this action on June 2, 2008.  According to Plaintiffs, a late-payment-penalty provision in the Agreement created a ten-day "grace period" which extended the due date on Plaintiffs' account statements.  Plaintiffs argued that the true due date for payment on their January withdrawal was March 3, 2008, ten days after the listed due date of February 22, 2008, thereby rendering their payment received on March 3, 2008 timely. Plaintiffs claimed that by disregarding the "grace period" and terminating their HELOC, National City breached the Agreement and unilaterally modified its terms in violation of TILA and Chapter 93A.

National City moved to dismiss, and on January 7, 2009, the district court entered an order dismissing Plaintiffs' claims. The court concluded that National City did not breach the Agreement as it was entitled to terminate the HELOC under the Agreement's express terms.  The court also dismissed Plaintiffs' TILA and

_____

[3]National City did not, however, accelerate the repayment of the outstanding balance owed by Plaintiffs on the HELOC.

-4-

Chapter 93A claims, finding that National City had not modified the Agreement nor breached any of its provisions.   This appeal followed.

## II.

On appeal, Cunningham and DeLaurentis argue that each of their claims was adequately pled and should be reinstated.   We consider each claim in turn, applying a de novo standard of review to the district court's dismissal of the complaint.   Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 5-6 (1st Cir. 2002) (citing TAG/ICIB Services, Inc. v. Pan Am. Grain Co., 215 F.3d 172, 175 (1st Cir. 2000)).[4]   To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## A. Breach of Contract

Regarding their breach of contract claim, Plaintiffs argue that the district court misinterpreted the Agreement in

---

[4]Though it is not entirely clear whether the district court dismissed the complaint under Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 56, we will treat it as a Rule 12(b)(6) dismissal, as that was the basis for National City's Motion to Dismiss below.  We note that the outcome would be the same if we were reviewing a grant of summary judgment.  The standard of review for summary judgment decisions is de novo, GTE Wireless, Inc. v. Cellexis Int'l, Inc., 341 F.3d 1, 4 (1st Cir. 2003), and summary judgment is appropriate if there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law.  Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 87 (1st Cir. 2005).

-5-

finding that it permitted National City to terminate the HELOC when Plaintiffs did not make a required payment by the specified due date. We disagree.

It is undisputed that the Agreement is governed by Ohio law. Ohio courts have held that the construction of a written contract is a matter of law. Ohio Water Dev. Auth. v. W. Reserve Water Dist., 776 N.E.2d 530, 535 (Ohio Ct. App. 2002). It is for the court to determine whether the language of the contract is ambiguous, thus requiring resort to extrinsic evidence to ascertain the intent of the parties. Id. Contractual language is ambiguous "where its meaning cannot be derived from the four corners of the contract or where the language may be reasonably interpreted in more than one way." Westbrock v. W. Ohio Health Care Corp., 738 N.E.2d 799, 804 (Ohio Ct. App. 2000). If the terms of the contract are unambiguous, "the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations." Uebelacker v. Cincom Sys., Inc., 549 N.E.2d 1210, 1215 (Ohio Ct. App. 1988).

In interpreting the Agreement, we look first to a section called "Payments," which provides: "Your payments will be due monthly. . . . You are required to pay a minimum payment by the Due Date shown on your statement . . . ." The Agreement later states (in a section entitled "Termination of Line") that "[National City] can terminate your [HELOC] and require you to pay the entire

outstanding balance in one payment if you breach a material obligation of this Agreement in that . . . [y]ou do not meet the repayment terms of this Agreement."

These terms are clear and unambiguous. The Agreement provides that Plaintiffs were required to make a minimum payment by the due date shown on their statement and that National City could terminate the HELOC if Plaintiffs did not meet the Agreement's repayment terms. Though the Agreement does not specifically define "repayment terms," at the very least they must include the provision requiring a minimum payment by the due date shown on the statement. That provision appears under the "Payments" section of the Agreement, and among the provisions in that section, the minimum payment provision is the only one that actually <u>requires</u> some action by the borrower during the ten-year life of the HELOC. Plaintiffs clearly violated the minimum payment provision when they failed to make a payment for the January withdrawal by the due date of February 22, 2008. Although under the circumstances Plaintiffs may reasonably view as harsh the bank's decision to terminate the HELOC based on that breach, the Agreement plainly permitted it to do so.

Plaintiffs assert that the terms regarding repayment are modified, or at least rendered ambiguous, by a provision included in the "Other Charges" section of the Agreement. Among the charges listed is a late payment fee which the Agreement states "will

apply" if National City does not receive the borrower's minimum payment within ten days of the due date. In other words, a borrower has ten days after the due date indicated in the monthly statement to make a minimum payment before National City's right to charge a late fee arises. According to Plaintiffs, this provision establishes a ten-day "grace period" during which any payment submitted would be considered timely and not in default of the Agreement. Applying that logic, Plaintiffs' payment, which posted on March 3, 2008, would have been timely because it was made within ten days of the February 22, 2008 due date.

But to apply Plaintiffs' logic would be to violate the plain language of the Agreement. The Agreement plainly states that National City has the right to terminate the HELOC if the borrower does not meet the Agreement's repayment terms. Plaintiffs contend that the late fee provision should be included among the "repayment terms," but even if that were an appropriate reading of the Agreement, it would not alter the fact that another of the repayment terms is necessarily the requirement that payment be made by the due date. The late fee provision does not modify that requirement.

Effectively, the Agreement gives National City two independent rights: (1) the right to charge a late fee if payment is received more than ten days after the due date, and (2) the right to terminate the HELOC if payment is received <u>at any time</u>

after the due date. Plaintiffs contend that it is not rational to assume that the Agreement can be terminated during the ten-day "grace period" when the Agreement does not allow National City to impose a minor penalty of a late payment fee during that time. But it is not irrational for National City to have reserved the option to terminate the HELOC upon failure to make payment by the due date and the option to impose a late fee for any payment made more than ten days after the due date. We "presume that the parties' intent resides in the language they employ in the contract," Rosepark Properties, Ltd. v. Buess, 855 N.E.2d 140, 147 (Ohio Ct. App. 2006), and the language of the Agreement unambiguously conveys these two independent rights to National City.

Plaintiffs' reliance on Krivins v. Smyers, C.A. NO. 9935, 1981 WL 3945 (Ohio Ct. App. Apr. 22, 1981), is unavailing. Plaintiffs argue that Krivins holds, as a rule of Ohio law, that if a contract provides a penalty for late payments, "it shows that the [issuer] would, in fact, accept late performance." Id. at *3. Thus, Plaintiffs contend, in some circumstances, such as in this case, a late fee provision in a contract precludes the termination of that contract for late payment.

Krivins does not stand for such a general proposition. Two points in particular distinguish it from the case before us. First, the late penalty provision in Krivins was not the only provision in the contract at issue which suggested that late

performance would be acceptable. The contract also provided explicitly for a forty-day grace period during which the purchasers could make their monthly payment before the seller was permitted to rescind the contract. Id. at *1. The Agreement in this case contains no such term. Second, the contract in Krivins was a land installment contract, and the purchasers faced forfeiture after failing to make two successive payments within the applicable forty-day grace periods. In discussing its reasons for holding that the purchasers were not in default, the Krivins court specifically noted the disfavor with which Ohio law regards the forfeiture of land contracts. Id. at *2. In fact, the forty-day grace period provided in the Krivins contract reflected an Ohio statutory requirement that a vendee in default under a land installment contract be given a total of forty days to perform the terms of the contract before facing forfeiture of the property.[5] Id. at *1 (citing Ohio Rev. Code §§ 5313.05, 5313.06). It is unclear whether the Krivins court would have reached the same result if the plaintiffs had not faced forfeiture of real property. The court's conclusion that a late fee is "inconsistent with the notion that time is of the essence," id. at *3, appears to be dicta and is not controlling, particularly not in a case that does not

---

[5]Neither party in this case has cited a similar provision of the Ohio Code which applies to contracts other than land installment contracts.

-10-

concern the forfeiture of real property, but merely the forfeiture of continued access to credit.

Accordingly, we find that the unambiguous terms of the Agreement permitted National City to terminate the HELOC. National City did not commit a breach.[6]

## B. TILA

Plaintiffs also argue that the district court erred in dismissing their TILA claim. Plaintiffs' claim is based on their contention that the Agreement's late-fee provision created a ten-day "grace period" during which an otherwise late payment would not be considered a default. According to Plaintiffs, National City's "unilateral" elimination of that grace period constituted a material change in the terms of the Agreement in contravention of TILA and its companion Regulation Z.[7] Plaintiffs further argue that National City failed to comply with that portion of Regulation Z which requires a creditor to disclose the payment terms of a home equity plan, including "[a]n explanation of how the minimum periodic payment will be determined and the timing of the payments." 12 C.F.R. § 226.5b(d)(5)(ii). As we find that the

---

[6]Plaintiffs also make a one-paragraph argument in their reply brief that National City's acceptance of their payment constituted a waiver of Plaintiffs' purported breach of the Agreement. As this argument was not raised in Plaintiffs' opening brief, it is deemed waived. Ouk v. Keisler, 505 F.3d 63, 66 n.3 (1st Cir. 2007) (citing United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998)).

[7]Regulation Z limits the changes that a creditor may make to the terms of a home equity plan. 12 C.F.R. § 226.5b(f)(3).

unambiguous terms of the Agreement did not create a grace period rendering otherwise late payments timely, Plaintiffs' TILA claim fails as a matter of law. National City neither changed any term of the Agreement nor provided Plaintiffs with inaccurate information regarding their payment obligations. There was no TILA violation.[8]

## C. Chapter 93A

Plaintiffs' Chapter 93A claim is likewise founded on the mistaken belief that the late-fee provision created a ten-day window in which otherwise late payments would be considered timely. Plaintiffs claim that National City violated Section 2(a) of Chapter 93A which makes unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). The "[u]nfair or deceptive acts" with which Plaintiffs charge National City are "its improper modification of the terms of

---

[8]Plaintiffs claim that in a May 1, 2008 phone conversation, DeLaurentis was informed by a National City customer service representative that National City had ceased honoring the grace period in its existing agreements in January 2008 in an effort to limit its credit exposure. Regardless of whether National City may have enforced the terms of the Agreement less flexibly after January 2008, there is no evidence that the terms were ever changed. The Agreement, executed on November 26, 2004, explicitly provided that National City had the right to terminate the HELOC if Plaintiffs did not meet the Agreement's repayment terms, which we have found to include making a minimum payment by the due date listed on the monthly statement. Perhaps National City was not exercising that right before January 2008, but that does not mean that the right did not exist at that time.

its HELOCs by the unilateral elimination of the grace periods, and the unlawful termination of HELOCs for payments made after the due date but within the grace period."

As discussed above, National City did not commit any of the acts which Plaintiffs allege. There was no "unilateral elimination" of the grace period as there was no such grace period to eliminate. Further, the termination of Plaintiffs' HELOC was not unlawful, as it was explicitly authorized by the Agreement. As Plaintiffs have alleged no unfair or deceptive conduct by National City, they have failed to state a 93A claim on which relief can be granted. See States Resources Corp. v. The Architectural Team, Inc., 433 F.3d 73, 84 (1st Cir. 2005).

## III.

For the foregoing reasons, we affirm the district court's dismissal of Plaintiffs' complaint.

**Affirmed.**