# United States Court of Appeals
## For the First Circuit

No. 08-2538

EDWARD F. RICHARDS,

Plaintiff, Appellant,

v.

HEWLETT-PACKARD CORPORATION, formerly COMPAQ, formerly
DIGITAL EQUIPMENT CORP.; INTERNAL DISABILITY MANAGEMENT,
GI, LONG-TERM DISABILITY PLAN; and THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA a/k/a PRUDENTIAL FINANCIAL,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel G. Gorton, U.S. District Judge]

Before

Lipez, Stahl and Howard,
Circuit Judges.

Bernard A. Kansky, with whom Kansky & Associates was on brief,
for appellant.
Edward P. O'Leary, with whom Fitzhugh & Mariani LLP was on
brief, for appellees.

January 19, 2010

**HOWARD, Circuit Judge.** In this ERISA[1] matter, Edward Richards appeals from an adverse summary judgment ruling which upheld the termination of his long-term disability benefits by Prudential Insurance Co. of America ("Prudential").[2] We affirm.

## I. BACKGROUND

A. The Policy

From May 1984 until January 1991, Richards was employed by Digital Equipment Corporation ("DEC") as a software engineer.[3] As a benefit of his employment with DEC, Richards was offered insurance coverage under the DEC Long-Term Disability Plan ("the Plan"). Pursuant to the Plan, Prudential managed and administered disability claims filed by DEC employees. The Plan is governed by ERISA.

To be eligible for long-term disability benefits under the Plan, a claimant must have suffered a sickness or accidental injury rendering him unable "to perform, for wage or profit, the material and substantial duties of his occupation." After twenty-

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C.§ 1001 et seq.

[2]There were several named defendants, including Richards' former employer and an individual employee of Prudential. The individual defendant is no longer a party. We refer to the remaining defendants/appellees collectively as "Prudential," both for convenience and because the insurer is the real party in interest in this litigation.

[3]Digital was subsequently acquired by appellee Hewlett-Packard.

four months, eligibility hinges on whether the claimant is "able to perform for wage or profit the material and substantial duties of any job" for which the claimant is reasonably fit by education, training or experience (emphasis added).

B. Richards' claim, termination and internal appeals

Richards applied for long-term benefits in May 1991, at the age of thirty-nine. He cited chronic fatigue immune dysfunction and fibromyalgia as the causes of his disability, which left him unable to work after January 15, 1991. Prudential accepted Richards' claim in October 1991 and commenced paying benefits retroactive to July 1991. In 1992 Richards was awarded Social Security disability benefits.

Since the Plan required proof of ongoing disability as a condition to continued receipt of benefits, Prudential regularly required Richards to provide a statement of his current condition and releases enabling Prudential to obtain his medical records. Although Richards occasionally balked -- at least once referring to the requests as "harassment" -- he uniformly complied with Prudential's requests, and his benefits continued apace.

In January 2001, Prudential, using releases provided by Richards a month earlier, requested medical records from three treating physicians Richards had previously identified in his periodic submissions to Prudential. The records request covered the period from January 1999 forward. On February 5, 2001, one of

the physicians, Dr. Carol Englender, reported that she had not seen Richards in her office since prior to January 1999. A few weeks later, in response to Dr. Englender's information, and consistent with plans to review Richards' claim developed in March 2000, Prudential sought an independent review of Richards' claim from Dr. Gwen Brachman, whose practice included internal medicine, rheumatology and occupational medicine. After reviewing Richards' medical history, Dr. Brachman submitted a report to Prudential, concluding that although Richards qualified for a diagnosis of fibromyalgia, he was not physically impaired from performing the essential functions of a sedentary job. Relying on Dr. Brachman's report, Prudential informed Richards on March 26, 2001 that he was no longer eligible for long-term disability benefits and that payments would cease as of June 1, 2001.

The letter terminating Richards' benefits also contained information about the appeals process, as did a follow-up letter sent approximately one month later. Over the next three years, Richards contacted Prudential on numerous occasions. Many of the calls were requests for details on the appeals process. Others were direct requests to immediately reinstate his benefits while he prepared his appeal. Still other calls contained accusations by Richards of Prudential's professional malfeasance and threats to bring Prudential's alleged misconduct to the attention of entities ranging from the federal government to television exposé programs.

On July 26, 2004, Richards submitted a formal written appeal of Prudential's March 2001 decision. He set forth three arguments for reinstatement of his benefits: first, that Dr. Brachman was not only unqualified to review his disability, but that she also used improper evaluation techniques and made false statements in her review; second, that Prudential should have deferred to the opinions of Richards' treating doctors; and third, that Prudential should have given deference to the 1992 decision of the administrative law judge who awarded Richards Social Security disability benefits. Prudential denied the appeal by letter dated September 28, 2004.

Responding to Richards' specific complaints, Prudential noted that Dr. Brachman specialized in occupational medicine and rheumatology, and was thus qualified to review Richards' medical records, his diagnoses of fibromyalgia and chronic fatigue, and to offer an opinion on his ability to work. Prudential further noted that it did take the Social Security determination into consideration, but that Prudential's determinations are independent from the agency's. Prudential also indicated that it had reviewed Richards' records before making its original determination in 2001, and since three years had passed, it also considered additional records that Richards had provided since the decision. Finally, Prudential buttressed its decision by pointing to a transferable skills analysis that concluded that Richards could perform a number

of sedentary occupations which fit within his education, training or experience.

In response to the September 28, 2004 letter, Richards submitted a letter and additional records from one of his treating physicians, Dr. Mark Hryniewich, and requested that Prudential again review its decision. On February 8, 2005, following review of the additional materials, Prudential again informed Richards that its original decision was correct.

The February 2005 letter also instructed Richards about his rights to pursue further appeals. Richards availed himself of this opportunity by submitting his second written appeal in August 2005. This appeal set forth three chief claims. First, Richards accused Prudential of ignoring Dr. Hryniewich's opinion that Richards' fibromyalgia had left him chronically disabled. Richards also protested the fact that Prudential did not contact Dr. Hryniewich personally. Finally, Richards claimed that Prudential's benefit termination notification was legally deficient because it lacked detailed instructions on how to appeal and explicit instructions about the particular information Richards would need to supply to get his benefits reinstated.

In response, Prudential conducted another review, and again affirmed the decision to terminate Richards' benefits. Relying on a medical record review performed by its Medical Director, Dr. Richard Day, Prudential reiterated its finding that

Richards could perform the duties of a sedentary job for which he was qualified. The denial letter also noted that previous neurological assessments Richards had undergone were "completely normal, as were laboratory findings, and there were no rheumatological laboratory or physical findings consistent with synovitis or an inflammatory process."[4] Additionally, Prudential informed Richards of Dr. Day's opinion that any treatment he was receiving for chronic fatigue syndrome was incomplete, given the lack of cognitive behavioral therapy.[5] In connection with Dr. Day's report, Prudential also referred back to the transferable skills analysis performed the previous year, which identified a number of sedentary positions suitable for Richards, given what Prudential contended was his residual functioning capacity.

Richards, this time through counsel, availed himself of Prudential's final level of appeal on January 30, 2006. In addition to repeating the claim that Richards was in fact totally disabled from performing any occupation, the appeal alleged that

---

[4]"Synovitis" is inflammation of fluid membranes in certain of the body's joint cavities and tendon sheaths. Stedman's Medical Dictionary 1773 (27th ed. 2000).

[5]Dr. Day also referred to a note from a Dr. O'Leary, which strongly opposed Richards' claim of disability. However, Dr. Day incorrectly referred to O'Leary's note as being dated April 2001, when the record reflects an actual date of April 1991. While this discrepancy might weaken somewhat the foundation of Dr. Day's opinion, it does not significantly undercut it. We address later the relevance of Dr. O'Leary's report within the overall context of the administrative record.

the previous rejection -- the September 29, 2005 decision -- "did not set forth with the required specificity" the reasons that Richards' benefits were discontinued. Also, Richards took issue with Dr. Day's reference to cognitive behavior therapy, likening it to "years ago, [when] epileptics were locked away in institutions for the mentally insane." Finally, Richards' attorney asked to meet with Prudential's appeals committee prior to its decision.

Although the substantive decision on Richards' last appeal was still months away, Prudential responded quickly to his attorney's missive. In a letter dated February 6, 2006, Prudential expressed its view that its various benefit termination letters adequately detailed the reasons for its decisions. Specifically, Prudential noted that its letters cited policy provisions, medical reviews and vocational assessments. Additionally, Prudential rejected Richards' demand that it contact his physicians, as it was not contractually obligated to do so and because it was unnecessary given the information already in his medical file. Further, Prudential rejected Richards' attorney's request to appear before the appeals committee, as that committee "doesn't 'meet' with claimants or their representatives; rather the panel provides a third and voluntary level of appeal review."

Prudential originally set an April 1, 2006 deadline for Richards to submit materials in support of his final appeal. Due to various communication breakdowns regarding deadlines, Prudential

extended the deadline to June 2006.  Richards used the additional time to supplement the record.[6]  In a letter dated June 5, 2006, one day before the deadline, Richards' attorney submitted a report from Dr. Hryniewich, dated the same day, in which he opined that Richards "has been totally and permanently disabled from engaging in and maintaining any gainful employment activity since 1991, up to and including the present, and further, it is likely that his total and permanent disability will continue for the foreseeable future."  Dr. Hryniewich noted that Richards "tested positive for fibromyalgia," and that while symptoms could be treated with pain medication, side effects made his return to gainful employment impossible.[7]

During the pendency of Richards' final appeal, Prudential sought additional medical record reviews from two rheumatologists.  One of these reviews, from Dr. Paul Howard, took place after receipt of Dr. Hryniewich's June 5 report.  On July 18, 2006, Prudential informed Richards' attorney of its determination

---

[6]The record also reflects that communication between Richards and Prudential had become further strained; phone logs contain notations of accusations by Richards during frequent phone calls, to which Prudential responded by communicating with him only in writing.

[7]The letter from Dr. Hryniewich was the only new medical evidence submitted to Prudential.  Several other letters were little more than attacks on Prudential and its medical reviewers, or efforts "to make Prudential aware" of damage awards against other insurance companies, seemingly as a warning.

that the decision to terminate Richards' benefits in 2001 was appropriate.

After rehashing some of the lengthy procedural history of the case, the denial letter detailed the findings of Dr. Howard and Dr. Dayton Dennis Payne, who reviewed Richards' records in April 2006. Dr. Payne's report noted Richards' diagnoses of chronic fatigue syndrome, chronic fatigue immune dysfunction syndrome and fibromyalgia. He also noted Richards' myriad other symptoms, including short-term memory issues, irritable bowel syndrome, depression and possible bursitis. Dr. Payne found that Richards' records showed that his symptoms had remained "essentially unchanged" over the fifteen years since he began receiving benefits, and also noted the statements by others that he would "never be able to return to gainful employment."

Dr. Payne also determined, however, that he could find no evidence of "destructive rheumatic findings," or that Richards had limitation of motion in his joints, weakness or atrophy, or specific organ system abnormalities. In light of these findings, Dr. Payne concluded that: 1) the records did not support a finding of functional impairment existing from June 2001 forward; 2) the records contained no objective evidence of any disease process that would be expected to lead to any restrictions or limitations; 3) while there was no evidence of malingering, no physical examination or testing procedure revealed objective evidence of impairment; and

4) because the objective findings did not support any degree of restrictions or limitations, Richards would be expected to have age-appropriate functional capacity.

Dr. Howard's report, dated July 6, 2006, noted that Richards' rheumatological symptoms between 2001 and 2006 were consistent with fibromyalgia, but that the resulting functional impairments were "mild in nature." Dr. Howard noted the 1991 opinions from Dr. O'Leary and Dr. Englender that posited that Richards' symptoms should allow him to eventually return to work. Dr. Howard also pointed out that a comprehensive physical examination conducted by Dr. Hryniewich in 2001 contained normal neurological findings, with no indication of any reported physical examination abnormalities. Regarding Dr. Hryniewich's June 2006 letter, Dr. Howard implied that its conclusion of total disability was somewhat suspect, given that a November 2005 examination yielded normal results, other than a complaint of foot pain. Additionally, Dr. Howard noted that while Dr. Hryniewich's letter cited side-effects of pain medication, the medical records themselves lacked any reference to side effects. Moreover, Dr. Howard suggested that Richards' non-compliance with recommended exercise programs deprived him of an opportunity to improve his functional capacity.

Relying on what he described as an "absence of any abnormalities by radiological study, laboratory studies and . . .

repeated physical examinations," Dr. Howard expressed his opinion that Richards, despite a "mild degree of impairment," would be able to perform sedentary work involving sitting, walking occasionally, standing frequently, lifting ten pounds frequently (occasionally twenty), working at a desk, and using his hands and fingers without restriction.

As noted, Prudential, relying in large measure on the opinions of Drs. Payne and Howard, rejected Richards' final appeal, concluding that "the medical evidence overwhelmingly supports that Mr. Richards has been capable of returning to work on a full time basis in both his own occupation as well as in an alternate, gainful occupation since at least June 01, 2001."

## C.  District court proceedings

Having exhausted his administrative remedies, Richards filed suit in federal district court, seeking reinstatement of benefits retroactive to June 2001, attorneys fees, and roughly $43,000 in sanctions against Prudential for failing to provide certain documents during the administrative process.  In due course, the parties filed cross-motions for summary judgment, which were referred to a magistrate judge for a report and recommendation ("R & R").

Following a hearing, the magistrate judge recommended that Prudential's motion be granted and that Richards' be denied. In the course of reaching its conclusion, the fifty-six page R & R

rejected Richards' arguments that Dr. Brachman was not qualified to evaluate Richards' records, that Prudential did not provide him with enough information about the benefit termination, and that Prudential improperly required Richards to supply "objective medical evidence" in support of his claim. Moreover, the R & R refused Richards' entreaties to give special weight to the Social Security Administration's favorable benefit determination and the opinion of Dr. Hryniewich, as Richards' treating physician. The district court judge adopted the R & R over Richards' objections and denied multiple motions for reconsideration. This appeal followed.

## II. ANALYSIS

### A. Standard of review

Prior to addressing the substance of Richards' grievances, the district court ruled in his favor on an important preliminary issue. The parties had disputed the applicable standard of review. Prudential sought to have the court review the administrative record for abuse of discretion, while Richards urged a more searching de novo review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits . . . ."). After a thorough review of

-13-

cases addressing identical policy language from this circuit and elsewhere, the court concluded that application of the de novo standard of review was warranted.  Prudential does not challenge this ruling.[8]

Our task is to independently weigh the facts and opinions in the administrative record to determine whether the claimant has met his burden of showing that he is disabled within the meaning of the policy.  We grant no deference to the administrators' opinions or conclusions.  Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 518 (1st Cir. 2005).  In other words, we stand in the shoes of the administrator to "determine . . . whether the administrative decision was correct."  Few v. Liberty Mutual Ins. Co., No. 06-CV-00427-JL, 2009 WL 756211 (D.N.H. March 19, 2009); cf. Leahy v. Raytheon Co., 315 F.3d 11, 19 (1st Cir. 2002) (under arbitrary and capricious review, reviewing court may not substitute its opinion for that of the plan administrator).  Where, as here, review is based on the administrative record and represents an ultimate conclusion as to a claimant's disability to be drawn from the facts, "summary judgment is simply a vehicle for deciding the issue."  Orndorf, 404 F.3d at 517.  Accordingly, the non-moving

---

[8]The district court also denied Richards' motion to supplement the record with an affidavit in which he described his condition. As Richards contested this decision only in his reply brief, it is waived.  See Cunningham v. Nat'l City Bank, 588 F.3d 49, 54  n.6 (1st Cir. 2009) (arguments not raised in appellant's opening brief are waived).

-14-

party is not entitled to the usual inferences in its favor.  Id.
In sum, "[o]ur guiding principle in conducting de novo review  .  .
. is that the plaintiff bears the burden of proving he is
disabled."  Id. at 518-19.  Therefore, in the context of the policy
definitions applicable here, Richards' burden is to prove that he
is "unable to perform for wage or profit the material and
substantial duties of any job" for which he is reasonably fit by
education, training or experience.

## B.  Appellant's claims

Richards makes three arguments on appeal.  First, he
claims that no weight was given to Dr. Hryniewich's opinions.
Second, he asserts error in the failure to give "any weight" to the
Social Security Administration's ruling in his favor.  Finally, he
argues that it was "error for the court to adopt the opinion of a
paper consulting physician who proffered a psychiatric condition to
the plaintiff" without justification.  We address these arguments
in turn.

### 1.  Dr. Hryniewich's opinions

Richards complains that the district court did not give
any weight to Dr. Hryniewich's opinions.  Since we are reviewing
the administrator's decision, we construe this argument as though
it were directed at Prudential.  Regardless, Richards' complaint
about the alleged exclusion of Dr. Hryniewich's records falls short
of the mark.  For example, he argues that reference to Hryniewich's

notes were absent from Dr. Brachman's 2001 report. Our review of the nearly 1,000-page administrative record suggests otherwise. Dr. Brachman's report explicitly mentions review of records from Richards' visits to the Fallon Clinic in Massachusetts. Included among these records were office notes from several visits with Dr. Hryniewich in 1997, 1999 and 2000 as well as Attending Physician's Statements from 1997 and 1999 in which Dr. Hryniewich informed Prudential of Richards' fibromyalgia and chronic fatigue, and stated that Richards' ability to perform work duties was "unknown." Moreover, as previously noted, Dr. Hryniewich's 2006 conclusion that Richards was disabled from any work was addressed by Dr. Howard during the final level of appeal.

A broader reading of Richards' argument suggests that his actual grievance is that Dr. Hryniewich's conclusions should have been given <u>controlling</u> weight, especially when compared to the doctors who reviewed Richards' record without examining him. This argument is contrary to existing law, as "the opinion of the claimant's treating physician, which was considered, is not entitled to special deference." <u>Orndorf</u>, 404 F.3d at 526 (citing <u>Black & Decker Disability Plan</u> v. <u>Nord</u>, 538 U.S. 822, 831 (2003)).[9]

_____

[9]By contrast, treating physicians' opinions are ordinarily accorded deference in Social Security disability proceedings. <u>See</u> <u>Morales-Alejandro</u>, 486 F.3d at 700 n.7 (citing 20 C.F.R. § 404.1527(d)(2)). That deference does <u>not</u> extend, however, to a physician's opinion -- such as the one offered by Dr. Hryniewich – that a claimant is unable to work, as such an opinion is not a medical one. <u>Id.</u>

In the final analysis, Dr. Hryniewich's opinions provide a shaky foundation for Richards' claim. First, his descriptions in 1997 and 1999 of Richards' employment prospects as "unknown" is at odds with his later pronouncements that Richards was disabled from any employment. Similarly, office notes from 2001 and 2005 contain no reference to disability from fibromyalgia.

Against this backdrop, we reject Richards' arguments regarding the adequacy of the weight given to Dr. Hryniewich's opinions.

### 2. Social Security disability determination

After Richards' initial application for Social Security disability benefits was denied in 1991, an administrative law judge ruled in his favor in October 1992. Richards argues that it was error to not give "any weight" to the fact that he was awarded Social Security disability benefits due to fibromyalgia and chronic fatigue immune dysfunction. We disagree with both the factual premise of the argument -- that no weight was given -- and its implied legal conclusion -- that the Social Security decision inexorably leads to reversal of Prudential's decision.

As a factual matter, the record suggests that Prudential did not ignore Richards' receipt of Social Security benefits. To the contrary, in rejecting Richards' first request for reconsideration in 2004, Prudential stated that its determinations "are independent from those of the Social Security Administrations

-17-

[sic] although we will review and consider documentation concerning their [sic] decisions."[10]

Richards fares no better when the legal underpinnings of his argument are examined.  Similar to his argument regarding his treating physician, Richards seems to suggest that the Social Security determination is entitled to a high degree of deference. However, in Pari-Fasano v. ITT Hartford Life and Accident Insurance Co., we held that "benefits eligibility determinations by the Social Security Administration are not binding on disability insurers."  230 F.3d 415, 420 (1st Cir. 2000).  While the Social Security determination might be relevant to an insurer's decision, "it should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan."  Id.  Here, Richards has not attempted a comparison between the two sets of criteria and has thus waived that strand of argument.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Even if we were to ignore the waiver, however, the administrative law judge's ruling on Richards' application for disability benefits contains the following finding: "The claimant retains the residual functioning capacity for less than a full range of sedentary work activity" (emphasis added). Given that, in the context of this case, the policy at issue requires Richards to prove that he is disabled from all sedentary

---

[10]The district court made a similar pronouncement.

work, a finding that he retains the capacity for "less than a full range" of such work hardly bolsters his case.[11]  Accordingly, we find no merit to Richards' Social Security-based argument.

### 3.  "Paper consulting physicians"

Richards' final argument is targeted at both the specific opinion of Dr. Brachman and, more generally, at the use of non-examining physicians to review claimant files.  As to the latter, Richards argues that the policy language giving Prudential the right to have a claimant undergo a physical examination somehow limits Prudential to the use of physical exams.[12]  We do not share this strained reading of the policy language, for which Richards has provided no legal support.[13]  Moreover, we have squarely held that an insurer is not required to physically examine a claimant,

---

[11]We also note that the Social Security award was made in 1992, while Prudential's termination occurred nine years later.  Although Richards points out that only Prudential terminated his benefits, he does not specify whether, or to what extent, his Social Security claim was reviewed in the years following the 1992 decision.

[12]Under the section captioned "Claim Rules," the Plan provides that "Prudential, at its own expense, has the right to examine the person whose loss is the basis of the claim.  Prudential may do this when and as often as is reasonable while the claim is pending."

[13]Richards invokes the doctrine of contra proferentem, according to which ambiguous policy terms must be strictly construed against the drafter during de novo review.  See Stamp v. Metropolitan Life Ins. Co., 531 F.3d 84, 93 (1st Cir.), cert. denied, 129 S. Ct. 636 (2008); Balestracci v. NSTAR Elec. and Gas Corp., 449 F.3d 224, 231 n.2 (1st Cir. 2006).  Here, however, we find no ambiguity in the policy provision giving Prudential the right to have Richards examined, such that it should be read as a requirement.

and that benefit determinations may be based on reviews of medical records.  <u>Orndorf</u>, 404 F.3d at 526.  Additionally, as in <u>Orndorf</u>, "this is simply not a case where the only medical evidence ran in [claimant's] favor, thus casting into doubt a denial of benefits." <u>Id.</u>  In fact, while the evidence may have supported the diagnoses of fibromyalgia or chronic fatigue immune dysfunction, every reviewing, board-certified doctor, with the exception of Dr. Hryniewich, found that Richards could perform a sedentary job for which he was reasonably fit by education, training or experience.[14]

As to Dr. Brachman's opinion, Richards first takes issue with her medical qualifications.  We are not persuaded.  The record reflects that Dr. Brachman specializes in occupational medicine and rheumatology, and Richards offers no evidence to the contrary.

Next, Richards argues that Brachman improperly ascribed a psychiatric condition -- depression -- to him without any basis. He then asserts that Prudential used this finding to discontinue his benefits by relying on the Plan's twenty-four month maximum payment period for disabilities "caused in whole or part by a mental health issue."  Even assuming that Dr. Brachman's mental

---

[14]As previously noted, Dr. Hryniewich's definitive statements regarding Richards' incapacity came several years after the initial denial and were arguably inconsistent with his pre-termination opinions regarding Richards' employment prospects, which he at least twice described as "unknown."

health conclusion is overstated,[15] Richards' argument nevertheless fails for two related reasons. First, while Dr. Brachman in her report discussed the medical record evidence of depression in Richards' history, she also addressed the lack of evidence of physical impairment, including synovitis, deformity, or decreased range of joint motion. She also noted the lack of any inflammatory vascular disease or neurocognitive impairment. Second, Prudential did not terminate Richards' benefits on the ground that he had exhausted them under the mental health provisions of the Plan. Instead, Prudential explicitly stated that it was evaluating whether his "current physical condition prevented [him] from performing any occupation." In other words, regardless of Dr. Brachman's reference to Richards' mental health history, the requirement that he prove his then-current physical disability remained.

Finally, to the extent that Richards argues that Dr. Brachman did not review the entirety of his medical history, we note that "the denial letter need not detail every bit of information in the record; it must have enough information to render the decision to deny benefits susceptible to judicial

---

[15]There are, in fact, references to depression in the record dating back to the early 1990s. In Dr. Brachman's opinion, depression can lead to a magnification or exaggeration of fibromyalgia symptoms. While Richards disputes this conclusion, his brief contains no refutation to the articles upon which Dr. Brachman relied in her report.

review."  <u>Orndorf</u>, 404 F.3d at 526.  Dr. Brachman's report and Prudential's termination letter easily satisfy this standard.[16]

### III.  CONCLUSION

We are not without sympathy to Richards' plight. However, the dispute in this case is not over whether Richards is afflicted with fibromyalgia or chronic fatigue immune dysfunction. And while termination of benefits after ten years of payments is a harsh outcome, it is one that Prudential was legally entitled to pursue within ERISA's strictures.  The sole issue before us is whether Richards met his burden of showing that these conditions rendered him unable to perform <u>any job</u> for which he is qualified. Based on the record before us, we agree with the administrator and the district court that he has failed to meet his burden.  The judgment of the district court is therefore **affirmed.**

---

[16]One possible basis for Richards' view is that the letter to him from Prudential lists certain records as "included" among those sent to Dr. Brachman, while Brachman's report contains a much larger list of records she actually reviewed.